UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KATHLEEN JOYCE,         )
                    )
        Plaintiff,     )
                    )
   v.               )       No. 2:23-cv-00030-JAW
                    )
LOUIS DEJOY,          )
                    )
        Defendant.  )

**ORDER ON SUMMARY JUDGMENT**

A former United States Postal Service employee sued the United States Postmaster General, alleging harassment, age and sex discrimination, a hostile work environment, and retaliation culminating in her termination. The court previously granted partial dismissal of the complaint, and the defendant now moves for summary judgment on the remaining Title VII and Age Discrimination in Employment Act claims. Concluding the defendant has shown there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law, the court grants the motion for summary judgment.

## I.    PROCEDURAL HISTORY

On January 13, 2023, Kathleen Joyce, acting pro se, filed a complaint against Louis DeJoy, the Postmaster General of the United States Postal Service (USPS), alleging that Mr. DeJoy violated Title VII of the Civil Rights Act (Title VII), the Family and Medical Leave Act (FMLA), the Age Discrimination in Employment Act

(ADEA), the Whistleblower Protection Act (WPA), and the Fair Labor Standard Act (FLSA).[1] *Compl. for a Civil Case* at 3 (ECF No. 1) (*Compl.*).

On March 13, 2023, the United States Magistrate Judge recommended the dismissal of the complaint after a preliminary review. *Recommended Decision after Prelim. Rev.* (ECF No. 6). Ms. Joyce objected to the recommended decision on March 29, 2023. *Resp. to Recommended Decision* (ECF No. 7). In light of the contents of her objection, the Court remanded the recommended decision to the Magistrate Judge on April 7, 2023 for a recommendation on whether the complaint remained deficient. *Order Remanding Recommended Decision* (ECF No. 8). On April 26, 2023, the Magistrate Judge recommended the dismissal of the claims brought pursuant to the FLSA and the FMLA. *Recommended Partial Dismissal of Compl.* (ECF No. 11). On May 12, 2023, Ms. Joyce again objected, *Obj. to Rep. and Recommended Decision* (ECF No. 12), and on October 3, 2023, the Court affirmed the Magistrate Judge's recommended decision to dismiss the Plaintiff's FLSA and FMLA claims. *Order Affirming Partial Dismissal of Compl.* at 7 (ECF No. 13).

On October 31, 2023, Mr. DeJoy moved to dismiss the WPA claim because USPS is not subject to the WPA. *Def.'s Mot. to Dismiss* at 2 (ECF No. 20). The Court granted the motion on April 1, 2024. *Order on Def.'s Mot. to Dismiss* (ECF No. 26).

On May 1, 2024, Mr. DeJoy filed a motion for summary judgment on the remaining ADEA and Title VII claims and an accompanying statement of undisputed

---

[1]    Ms. Joyce's complaint did not clarify whether her suit was against Mr. DeJoy in his individual capacity, official capacity, or both. *See Compl.* The Court assumes Ms. Joyce intended to proceed against Mr. DeJoy in his official capacity as USPS Postmaster General.

material fact. *Def.'s Mot. for Summ. J.* (ECF No. 30) (*Def.'s Mot.*); *Def.'s Statement of Undisputed Material Facts in Support of Def.'s Mot. for Summ. J.* (ECF No. 29) (DSMF). On May 21, 2024, Ms. Joyce filed a request seeking more time to obtain affidavits. *Req. for a Continuance Involving Summ. J.* (ECF No. 32). Treating her request as a motion for enlargement of time to respond to the motion for summary judgment, the Magistrate Judge granted Ms. Joyce's request that same day, allowing her until June 21, 2024 to file her response and "remind[ing] [the Plaintiff] to review F. R. Civ. P. 56 and all of its subparts and Local Rule 56 and its subparts to understand the procedures and requirements of responding to a summary judgment motion." *Order* (ECF No. 33).

Ms. Joyce filed her opposition to the summary judgment motion and related documents on June 21, 2024. *Pl.'s Mot. to Oppose Summ. J.* (ECF No. 34) (*Pl.'s First Baker Decl. Opp'n*); *[Pl.'s Opp'n to] Def.'s Mot. for Summ. J.* (ECF No. 35) (*Pl.'s Opp'n*); *[Pl.'s Opp'n to] Darin Baker's EEO Investigative Aff. (Witness)* (ECF No. 36) (*Pl.'s Second Baker Decl. Opp'n*). Mr. DeJoy replied in support of summary judgment on July 3, 2024. *Def.'s Reply in Further Support of its Mot. for Summ. J.* (ECF No. 39) (*Def.'s Reply*).

Also on June 21, 2024, Ms. Joyce separately moved for an extension of time to file affidavits and for the Court's assistance in obtaining affidavits. *Mot. to Extend Time to File Affs., Mot. for Access to Affs.* (ECF No. 37). Mr. DeJoy opposed the Plaintiff's motion on July 3, 2024. *Def.'s Opp'n to Pl.'s Mot. to Extend Time and Mot. for Access to Affs.* (ECF No. 38). The Magistrate Judge denied Ms. Joyce's motion on

July 25, 2024, explaining "[t]he information gathering phase of this case ended when the discovery period expired on April 18, 2024 . . .. Her late request for more time to gather affidavits to bolster her case and for the Court's assistance in ordering those affidavits be procured is untimely and procedurally improper." *Order* (ECF No. 40).

Ms. Joyce filed a motion for the Magistrate Judge to reconsider on August 12, 2024, *Mot. for Recons.* (ECF No. 41), which Mr. DeJoy opposed on August 26, 2024. *Def.'s Opp'n to Pl.'s Mot. for Recons.* (ECF No. 42). Ms. Joyce replied on August 26, 2024. *Reply to Resp. to Mot. for Recons.* (ECF No. 43). On August 27, 2024, the Magistrate Judge denied Ms. Joyce's motion for reconsideration as both untimely and unmeritorious. *Order* (ECF No. 44).

## II.    STATEMENT OF FACTS

### A.    Failures to Comply with Federal Rule of Civil Procedure 56 and Local Rule 56

District of Maine Local Rule 56 prescribes a detailed process by which the parties present the Court with the "material facts . . . as to which the moving party contends there is no genuine issue." D. ME. LOC. R. 56(b). This local rule requires each statement of material fact to be "set forth in a separately numbered paragraph[]" and "supported by a record citation." *Id*. The Defendant complied with Local Rule 56 by submitting a statement of material facts supported by affidavits from Trevor Taniguchi, *Decl. of Trevor H. Taniguchi* (ECF No. 27), and Darin Baker, *Decl. of Darin Baker* (ECF No. 28). *See* DSMF ¶¶ 1-22.

After the moving party files their statement of material facts, a party opposing a motion for summary judgment must then file an opposing statement in which she

admits, denies, or qualifies the moving party's statements, with citations to supporting evidence, and in which it may set forth additional facts, again with citations to supporting evidence.  D. ME. LOC. R. 56(c).  Ms. Joyce did not file such an opposing statement.  Instead, she submitted three filings in opposition to the Defendant's summary judgment motion; one responds to three factual assertions in the motion itself, *Pl.'s Opp'n* at 1-2, and two take issue with Mr. Baker's declaration, *Pl.'s First Baker Decl. Opp'n*; *Pl.'s Second Baker Decl. Opp'n*.  None of Ms. Joyce's three submissions admits, denies, or qualifies the Defendant's statement of material facts or provides an opposing statement of material facts, with citations, as required by Local Rule 56(c).  As the Court stated previously, "[a] qualified response is not an appropriate vehicle for introducing new facts.  Rather, the qualification should offer record citations that show that the statement must be modified in some way to be accurate—or explain why such citations are not available."  *Goldenson v. Steffens*, No. 2:10-cv-00440-JAW, 2014 U.S. Dist. LEXIS 201258, at *5 n.3 (D. Me. Mar. 7, 2014).

In support of her opposition to summary judgment, Ms. Joyce attaches her own affidavit, which states, in its entirety: "I, Kathleen Joyce, Pro Se, have prepared numerous pages to oppose summary judgment.  I swear, under oath, that all the statements, paperwork and exhibits are true and accurate to the best of my ability."  *Pl.'s First Baker Decl. Opp'n*, Attach. 1, *Aff. of Kathleen Joyce* (*Joyce Aff.*).  Rule 56 of the Federal Rules of Civil Procedure allows the use of an affidavit to "support or oppose a motion [for summary judgment]" if the affidavit is "made on personal

knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant . . . is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). However, "[c]ourts may disregard inadmissible portions of declarations, keeping in mind that 'personal knowledge is the touchstone.'" *Hornof v. United States*, 2:19-cv-00198-JDL, 2023 U.S. Dist. LEXIS 153898, at *7 (D. Me. Aug. 31, 2023) (quoting *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001)). "[R]equisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise," *id.* (quoting *Perez*, 247 F.3d at 316), and "[i]t is apodictic that an 'affidavit . . . made upon information and belief . . . does not comply with Rule 56(e)," *id.* (quoting *Sheinkopf v. Stone*, 927 F.2d 1259, 1271 (1st Cir. 1991) (alterations in original)). The Court concludes that Ms. Joyce's affidavit does not meet this bar and accordingly does not accept it as a blanket statement of the veracity of the evidence and claims Ms. Joyce submits in opposition to Mr. DeJoy's motion for summary judgment.

In constructing the narrative of undisputed facts for purposes of considering the motion for summary judgment, each properly supported fact "shall be deemed admitted unless properly controverted." D. ME. LOC. R. 56(f). However, the Court "may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D. ME. LOC. R. 56(f); *see also Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).

Further, in assessing the record on summary judgment, the Court will "afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Rogan v. City of Bos.*, 267 F.3d 24, 27 (1st Cir. 2001)). "In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of sound discretion, to accept the moving party's facts as stated." *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). Although district courts must construe pro se pleadings liberally, *Sanchez v. Brown Univ.*, No. 23-1983, 2024 U.S. App. LEXIS 15530, at *1 (1st Cir. 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), a litigant's pro se status "does not insulate a party from complying with procedural and substantive law," *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). As Ms. Joyce failed to properly contest Mr. DeJoy's statements of material fact, the Court deems each properly supported fact in the Defendant's statement of undisputed material fact admitted pursuant to Local Rule 56(f).

Although the Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts," D. ME. LOC. R. 56(f), in light of its obligation to liberally construe pro se filings, the Court admits the Defendant's properly supported material facts only after additionally reviewing the three motions Ms. Joyce submitted in opposition to summary judgment, as each addresses the factual record and does not raise a legal argument. *See Pl.'s*

*First Baker Decl. Opp'n*; *Pl.'s Opp'n*; *Pl.'s Second Baker Decl.* The Court specifically reviewed Ms. Joyce's three filings for points of contention with the Defendant's statement of material facts and, where there were facts in dispute, reviewed the evidence Ms. Joyce cited in support of her contention, if any was indicated.[2] After review, the Court concludes that Ms. Joyce's qualifications and denials of the Defendant's statement of material facts are unsupported by the citations she provided and thus deems the Defendant's statement of material fact admitted. *See Tropigas de P.R., Inc.*, 637 F.3d at 56 (in assessing the record on summary judgment, courts will "afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative").

### B.    The Factual Record

#### 1.    The Parties

Kathleen Joyce worked as a Sales and Services-Distribution Associate (SSDA) at the Freeport, Maine Post Office until her termination on August 24, 2020.  DSMF ¶¶ 1, 9.  Louis DeJoy is the Postmaster General of the United States Postal Service. *Id.* at 1.

#### 2.    Kathleen Joyce's Employment at USPS

As an SSDA, Ms. Joyce's duties included covering the retail unit in South Freeport.   DSMF ¶ 1.   SSDA duties also include distributing mail and serving

---

[2]    These specific points of Ms. Joyce's qualification and denial of the Defendant's statement of material facts are discussed in footnotes in the section of this order recounting The Factual Record.

customers at the retail window. *Id.* ¶ 2. In this way, an SSDA interacts with customers and the public. *Id.*

### 3. Kathleen Joyce's Workplace Disciplinary History[3]

All USPS employees are required to abide by postal rules and regulations, including the Employee Labor Relations Manual (ELM). *Id.* ¶ 3. In the course of her employment with USPS, Ms. Joyce received progressive discipline, each instance

---

[3]    Addressing her employment record, Ms. Joyce contends:

> There were absolutely no complaints against me while working the window from September 2013-December 10, 2019 that can be used as evidence in a trial. Darin Baker does not use anonymous[] complaints without names and contacts and complaints where employee can't offer explanation. Exhibit 2, [] EEO Investigative Affidavit[,] pgs. 169, 170 and 171. One serious complaint I received was on December 18, 2019 which is the infamous day I took off for exhaustion.

*Pl.'s Opp'n* at 1.

Although the Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts," D. ME. LOC. R. 56(f), the Court nonetheless reviewed the attachment Ms. Joyce cited in support of her assertion that she received no complaints between September 2013 and December 10, 2019.

That attachment, *Pl.'s Opp'n*, Attach. 2, *EEOC Investigative Aff.*, appears to explain the difference between a customer complaint raised against Ms. Joyce and a customer complaint raised against another USPS employee. *See id.* at 3 ("The difference between the two [cases] is with Joyce's conduct the customers reached out in a prompt timeframe and were willing to provide specific information detailing the inappropriate conduct as well as follow up with written statements. Also, other employees witnessed Joyce's conduct and were willing to write statements supporting the allegations against Joyce"). The attachment does not address the number of customer complaints against Ms. Joyce between September 2013 and December 10, 2019 and does not support the proposition for which Ms. Joyce cites it. The Court does not credit Ms. Joyce's unsupported statement as part of the factual record.

In a different filing, Ms. Joyce contests an assertion in the motion for summary judgment that "[i]n fact Ms. Joyce was the subject of even more extensive discipline, some dating back to her initial term of employment with USPS in the 1980's." *Pl.'s Opp'n* at 1 (quoting *Def.'s Mot.* at 4, line 2). Ms. Joyce says, "[d]iscipline is only kept on records for two years if you have no more discipline, so in 1989 onward I would have a spotless record" and additionally avers these disciplinary records are "old, outdated, and noted to put me in a negative light." *Id.* The Defendant did not include Ms. Joyce's disciplinary records from the 1980s in its statement of material facts, *see, generally,* DSMF, and the Court thus ends its discussion here, as the dispute is immaterial to the motion at bar.

charging a violation of the ELM based on some form of Plaintiff's workplace misconduct. *Id.* ¶ 4.

Specifically, on March 14, 2019, Susan Keene,[4] then the Freeport Postmaster, issued Ms. Joyce a first letter of warning for failure to satisfactorily perform duties in violation of ELM § 665.13, "Discharge of Duties," when she scanned a collection point early, requiring the Postmaster to re-scan the vestibule. *Id.* ¶ 5.[5]

Then, on August 9, 2019, Ms. Joyce received a second letter of warning pursuant to ELM § 665.13 from Ms. Keene for failure to satisfactorily perform duties. *Id.* ¶ 6. This letter of warning arose from an incident on July 27, 2019 in which Ms. Joyce left both safes unlocked at the Freeport Post Office despite certifying that the safes were locked when she signed off on the PM certifications. *Id.* The August 9, 2019 letter also addressed an incident wherein Ms. Joyce took a ring scanner home and left it in her car over the weekend, thereby causing a delay in processing the mail. *Id.*[6]

---

[4]    The statements of fact do not reveal Ms. Keene's position within the USPS. However, attached to Postmaster Darin Baker's sworn declaration is a Letter of Warning – Performance against Ms. Joyce signed by Susan Keene as "Postmaster Freeport." *Decl. of Darin Baker*, Attach. 1, *7-Day Suspension* (Feb. 4, 2020) (ECF No. 28) (signed by Susan Keene as Postmaster Freeport).

[5]    Ms. Joyce does not contest the truthfulness of this assertion, simply saying, "I accidentally scanned the lobby one minute early. I understood my mistake, did not grieve it and it never happened again." *Pl.'s First Baker Decl. Opp'n* at 1.

[6]    Describing this incident, Ms. Joyce says:

> I accidentally forgot to close safes[] 2 and 3. Safe 1 is a postmaster only safe with $80,000[] worth of stamps and money orders which Darin Baker left open all the time. He used to call after he left the building and ask whoever was working to lock it. Safe 2 held window clerk stamps and safe 3 had locked individual window clerk drawers and carrier keys. Darin Baker uses 8/7/2019 Letter of Warning as the first step in his removal process while he leaves safe[s] open, repeatedly, with no repercussions. I understood my mistake, two weeks after my father[']s unexpected death, did not grieve it and it never happened again. Picture.

*Pl.'s First Baker Decl. Opp'n* at 1.

On February 4, 2020, Caley Allen,[7] then the Officer in Charge, issued Ms. Joyce a seven-day suspension for refusing to report for work and failing to finalize her end-of-day transactions in the retail RSS system.[8] *Id.* ¶ 7. Specifically, Ms. Joyce failed to report to work on December "18, 2019, indicating the prior day that she had worked ten days and was taking December 18, 2019 as a non-scheduled (NS) day, which USPS did not authorize.[9] *Id.* In addition, on December 20, 2019, Ms. Joyce left work and failed to end her day in RSS. *Id.* In imposing her suspension, the Defendant further noted that "[d]uring multiple interaction with management the employee behaves in an inappropriate manner, using a raised voice and profane language. There are multiple complaints regarding employee[']s [] rude contact with

---

Ms. Joyce's statement does not contest the truthfulness of the assertion that she received a letter of warning on August 7, 2019 for failure to lock safes at her workplace. The Court reviewed the attachment it believes Ms. Joyce cites in support ("Picture"), *Pl.'s First Barker Decl. Opp'n*, Attach. 2, *Exhibit 1*. She has captioned this image "Darin Baker leaving Safe 1 open all day" and it appears to depict an open safe. *See id.* There is little else the Court can infer from this picture, but, as material to the present case, it does not establish Ms. Joyce did not receive a letter of warning on August 7, 2019 for failure to properly lock safes 2 and 3 at the Freeport Post Office.

Because Ms. Joyce does not contest that she received a workplace citation on the date alleged by the Defendant, for the reasons alleged by the Defendant, the Court treats this material fact as admitted.

[7]    The statements of material fact do not reveal Ms. Allen's position with the USPS. However, Magistrate Judge Wolf's prior recommended decision dated March 13, 2023 describes Ms. Allen as "an acting Officer in Charge" for the USPS. *Recommended Decision After Prelim. Review* at 3 (ECF No. 6); *see Decl. of Darin Baker*, Attach. 3, *7-Day Suspension* (Feb. 4, 2020) (ECF No. 28) (signed by Caley Allen as "OIC").

[8]    The Defendant's statement of material facts does not define the acronym RSS. *See* DSMF ¶¶ 1-22. The acronym may refer to "retail systems software."

[9]    Ms. Joyce does not dispute her absence from work on December 18, 2019, but says "I had left work the day before and told [Caylee Allen] I wouldn't be back until Michelle Carter stops harassing me and threatening me." *Pl.'s Second Baker Decl. Opp'n* at 2. She says further, "I was out of work, FMLA . . . retroactively approved from approximately December 20, 2019 – January 27, 2020 because of the stress caused by Caylee Allen, Michelle Carter, and then Darin Baker." *Id.* She does not cite any evidence in her attached filings in support of this proposition.

customers at the retail counter." *Id.* The seven-day suspension charged violations of ELM § 665.13 and ELM § 665.16, "Behavior and Personal Habits." *Id.*[10]

Mr. Baker next issued Ms. Joyce a fourteen-day suspension on April 14, 2020. *Id.* ¶ 8. The suspension charged Ms. Joyce with exhibiting unacceptable conduct by behaving inappropriately with a customer on the phone on March 16, 2020. *Id.* The customer had called to get assistance with tracking a package, and Ms. Joyce asked the customer for their location. *Id.* When the customer responded that they were in Freeport, Maine, Ms. Joyce then yelled at the customer over the phone, "I know where you are, what is your address[?!]" and "[y]ou can call back when you can talk with someone else" and proceeded to hang up the phone. *Id.* Employees M.C. and M.M. were present and wrote statements verifying Ms. Joyce's behavior. *Id.* The fourteen-

---

[10]    In her first motion opposing Mr. Baker's declaration, Ms. Joyce contests his characterization of her seven-day suspension, alleging "[t]his is not a true and accurate copy of the 7-Day Suspension." *Pl.'s First Barker Decl. Opp'n* at 1. She says further, "7-Day Suspension-Conduct dated 12/31/2019 three weeks after alleged incident is what the PDI was about on 1/3/2020. Exhibit 1. Pgs. 1 and 2 + 3." *Id.* Attachment 1 to this filing is Ms. Joyce's own affidavit, *Joyce Aff.*, which does not say anything about the seven-day suspension (let alone other instances of workplace citations). Attachment 2, however, appears to be the notification Ms. Joyce received of her seven-day suspension. *Pl.'s First Baker Decl. Opp'n*, Attach. 2, *Exhibit 1*. The notice states Ms. Joyce received a seven-day suspension for unacceptable conduct due to an incident on December 10, 2019 with a "visibly upset customer" who alleged Ms. Joyce was "rude to her because the incorrect zip code was on the parcel" and "[w]hen she asked you to help her find the correct zip code, you told her she needed to find it herself." *Id.* at 1-2. When Ms. Joyce heard the customer reporting this encounter to another USPS employee, the Plaintiff said, "why don't you come over here and say that to my face." *Id.* at 1. Attachment 3 to the same motion, *Pl.'s First Baker Decl. Opp'n*, Attach. 3, *Exhibit 2*, reports that Ms. Joyce received a "PDI for attendance" on January 3, 2020 for "walk[ing] out of work December 12, 17, and 20, 2019, and . . . not com[ing] into work on December 18, 2019." *Id.* at 1.

By the Court's reading, these attachments support Mr. DeJoy's account of the reasons behind the seven-day suspension Ms. Joyce received.

day suspension charged a violation of ELM § 665.13, ELM § 665.16, and ELM § 665.15, "Obedience to Orders." *Id.*[11]

### 4.    Kathleen Joyce's Removal

Mr. Baker issued Ms. Joyce a notice of removal on August 24, 2020 due to two incidents with customers which occurred on June 30, 2020 and July 13, 2020, respectively. *Id.* ¶ 9. As required by the Collective Bargaining Agreement (CBA), William Monagle, Manager of Post Office Operations, reviewed and concurred with the decision. *Id.*

The June 20, 2020 incident involved customers Mr. and Mrs. W. *Id.* ¶ 10. Mr. W. went to the post office to mail a package and was helped by M.C., another USPS employee. *Id.* When Mr. W. arrived home, he realized he should not have mailed the envelope and sought a return. *Id.* He first called the Freeport Post Office and spoke with Ms. Joyce. *Id.* Mr. W. recounted that, during the call, Ms. Joyce "did not respond to his call in a professional and courteous manner," and used a "curt tone." *Id.* His phone battery died during the conversation, so he went to the Post Office in person, where he encountered Ms. Joyce and described her behavior as very rude. *Id.* Ms. Joyce asked Mr. W. for the address, and before Mr. W. and Mrs. W. could provide the address, the Plaintiff went to the trashcan to retrieve a piece of paper, saying "this was the piece of paper" that she had ready to write down their address before they "hung up" on her. *Id.* When Mr. W. attempted to explain that his phone battery had

---

[11]    Ms. Joyce submits several unsupported points of contention about this disciplinary incident; the Court reviewed the several citations Ms. Joyce did provide in support and finds them unavailing. *Pl.'s First Baker Decl. Opp'n* at 2-3. The Court does not credit Ms. Joyce's unsupported objections as part of the factual record.

expired, Ms. Joyce said she "wasn't going to argue with them" and went to get M.C. who retrieved the mail and processed the return.  *Id.*

The second incident on July 13, 2020 involved a customer attempting to retrieve her mail from a post office (PO) box.  *Id.* ¶ 11.  M.T., a USPS employee, observed the incident and documented it in writing.  *Id.*  The customer had rented a PO box online while out of state.  *Id.*  When the customer encountered difficulties collecting her mail due to the COVID-19 pandemic, she called the post office in June 2020 and M.C. agreed to hold the individual's mail and not release the PO box until the customer could travel to Maine.  *Id.*  On July 13, 2020, the customer approached the counter at the Freeport Post Office and spoke with Ms. Joyce, who behaved rudely, told the customer she was not prepared, and told her to go out to the PO box area and knock when she was ready.  *Id.*  When the customer located her PO box number, she knocked and returned.  *Id.*  Ms. Joyce then claimed the customer was "stealing services," saying, "[s]o we've just been collecting your mail for free?"  *Id.*  Ms. Joyce retrieved the customer's mail in a carton and said, "[y]ou can bring this back, or I guess you could keep this for free too."  *Id.*  The customer reported the incident approximately three weeks later, saying it was traumatizing and took that long to reflect and become less emotional to discuss the matter.  *Id.*

Ms. Joyce's removal noted the prior progressive discipline issued to her, to show that, among other things, she had been on notice that the manner in which she interacted with customers and co-workers would not be tolerated.  *Id.* ¶ 12.  Further, the prior letters of discipline she received indicated that a failure to correct her

workplace deficiencies may result in "further discipline, up to and including [her] discharge from [USPS]." *Id.* In requesting Ms. Joyce's termination, Mr. Baker determined that, despite Ms. Joyce having been notified of USPS's conduct requirements, her "behavior with customers has not improved," and "when challenged by a customer, she becomes aggressive and argues with them." *Id.* ¶ 13. Mr. Baker determined that although Ms. Joyce had multiple opportunities to improve her conduct through progressive discipline, she refused to accept responsibility and failed to improve her conduct. *Id.*

Mr. Baker reported that in PDIs he conducted with her (with her union representative in attendance), Ms. Joyce expressed no remorse for her actions and failed to indicate her conduct would be different going forward.[12] *Id.* ¶ 14.

### 5.    The Allegations of Discrimination

Ms. Joyce identifies her postmaster, Mr. Baker, as the discriminating official. *Id.* ¶ 15. Ms. Joyce was disciplined by multiple servicers, including Ms. Keene, Ms. Allen, and Mr. Baker. *Id.* ¶ 16. Mr. Baker began his employment at the Freeport Post Office in January 2020 and the first time Mr. Baker and Ms. Joyce worked together was January 28, 2020. *Id.* ¶ 15.

Ms. Joyce alleges Mr. Baker called her names, including "dyslexic, a train wreck, a prepper, a malcontent, and inefficient." *Id.* ¶ 21.

Mr. Baker, in his official capacity as a postal supervisor and manager, has issued corrective actions for performance deficits and unacceptable conduct to many

---

[12]    The Defendant does not define "PDI"; however, the Court believes this acronym refers to a pre-disciplinary interview.

employees, male and female, between five and thirty years younger than Ms. Joyce. *Id.* ¶ 17.

Ms. Joyce identifies other female employees, such as M.C. and P.L., who she alleges were treated more favorably than she was. *Id.* ¶ 18. She also identifies A.Y. as an individual who was terminated. *Id.* ¶ 19. Ms. Joyce concedes that individuals outside of her protected class were also disciplined, including T.B. *Id.* ¶ 20.

Ms. Joyce previously sued USPS, *Joyce v. Postmaster General, United States Postal Service*, No. 2:10-cv-00310-JAW, 2013 U.S. Dist. LEXIS 10314 (D. Me. Jan. 25, 2013). *Id.* ¶ 22. She concedes that although she lost that suit, she nonetheless was subsequently hired. *Id.*

## III.   THE PARTIES' POSITIONS

### A.   Louis DeJoy's Motion for Summary Judgment

Mr. DeJoy argues he is entitled to judgment as a matter of law on Ms. Joyce's ADEA and Title VII claims because the Plaintiff has not established a prima facie case of discrimination or retaliation. *Def.'s Mot.* at 2. He avers Ms. Joyce has failed to demonstrate that there is a "genuine issue of material fact" in dispute, *id.* at 8 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)), and reminds the Court "[i]t is well-settled law that to survive a motion for summary judgment, 'the material creating the factual dispute must herald the existence of definite, competent evidence fortifying the plaintiff's version of the truth. Optimistic conjecture or hopeful surmise will not suffice.'" *Id.* at 8-9 (quoting *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 338 (1st Cir. 1997) (cleaned up by Defendant)).

### 1.    Discrimination

"The burden-shifting paradigm enunciated in *McDonnell [Douglas] Corp. v. Green*, 411 U.S. 792 (1973) guides the analysis for disparate treatment claims" and requires a Plaintiff to initially establish a prima facie case of discrimination by demonstrating: (1) that she is a member of a protected class; (2) who performed her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that she was treated differently from similarly situated individuals not in her protected class. *Id.* at 9 (citing *Berry v. City of South Portland, Me.*, 525 F. Supp. 2d 214, 228 (D. Me. 2007) (in turn citing *McDonnell Douglas Corp.*, 411 U.S. at 802; *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001)).

Mr. DeJoy claims that, here, Ms. Joyce "fails to clear even this initial hurdle" because "she has failed to establish that she performed her job satisfactorily," and in fact concedes that she received multiple warning letters related to her workplace misconduct informing her that she may face "further discipline, up to and including [her] discharge from the Postal Service." *Id.* (citing DSMF ¶¶ 4, 12). "Multiple instances of workplace deficiencies and unacceptable conduct in violation of the Employee and Labor Relations Manual does not equate to satisfactory job performance," the Defendant argues. *Id.* at 9-10.

Next, Mr. DeJoy alleges Ms. Joyce has failed to show that similarly situated individuals outside her protected groups received more favorable treatment under similar circumstances. *Id.* at 10.  To the contrary, the Defendant says, "[i]n some instances, Plaintiff concedes that individuals *within* her protected group were treated

more favorably," such as female employees M.C. and P.L. *Id.* (citing DSMF ¶ 18) (emphasis in original). "It is self-evident that these comparators cannot support an inference of discrimination based on sex," he says. *Id.* In other instances, Mr. DeJoy adds, Ms. Joyce concedes that individuals outside of her protected class received discipline for what she purports to be the misconduct of her coworkers, including T.B., a male and her junior, who received a letter of warning and seven-day suspension. *Id.* (citing DSMF ¶¶ 17, 20). Mr. DeJoy claims "the record reflects that Mr. Baker did not favor either younger or significantly younger employees. He issued discipline to male and female employees ranging in age from five to thirty years younger than Plaintiff." *Id.* (citing DSMF ¶ 17). The Defendant submits "[t]his shows neither favoritism nor discrimination. Instead, it evidences that discipline was issued where warranted." *Id.* at 10-11.

Mr. DeJoy further claims that Ms. Joyce has not submitted other evidence that would allow a jury to infer discrimination. *Id.* at 11. He avers the only comments or references to sex or age are raised by Ms. Joyce herself, and the names Ms. Joyce alleges that Mr. Baker called, including "dyslexic, a train wreck, a prepper, a malcontent, and inefficient," make no reference to sex or age. *Id.* (citing DSMF ¶ 21). Mr. DeJoy asserts that Ms. Joyce's subjective beliefs of discrimination are not evidence, *id.* (citing *Kelleher v. Loral Infrared & Imaging Sys., Inc.*, No. 96-1186, 1996 U.S. App. LEXIS 23353, at *4 (1st Cir. Sept. 6, 1996) (in turn quoting *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996) ("[R]umors, conclusory allegations, and subjective beliefs [are] wholly insufficient evidence to establish a

18

claim of discrimination as a matter of law")), and she has otherwise failed to proffer "specific evidentiary support" showing discriminatory animus. *Id.* (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)).

### 2.    Retaliation

To establish a prima facie case of retaliation, the Defendant says, Ms. Joyce must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally connected to the protected activity. *Id.* (citing *Abril-Rivera v. Johnson*, 806 F.3d 599, 608 (1st Cir. 2015) (in turn citing *Gerald v. Univ. of P.R.*, 707 F.3d 7, 24 (1st Cir. 2013)). The Defendant avers a retaliation claim requires "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* (citing *Abril-Rivera*, 806 F.3d at 608 (in turn citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-47 (2013)).

Here, Mr. DeJoy argues Ms. Joyce has failed to establish any causal connection between any prior Equal Employment Opportunity (EEO) activity and her removal and has "made no effort" to describe her prior EEO activity, whether that EEO activity would be protected under federal anti-discrimination law, who among her co-workers and supervisors were aware of her prior EEO activity, or that her prior EEO activity was the but-for cause of her termination.[13] *Id.* at 12 (citing *Compl.* at 9). The Defendant further argues that Ms. Joyce's assertion of retaliation is further belied by

---

[13]    Mr. DeJoy does not define this acronym; the Court believes it stands for Equal Employment Opportunity.

the fact that she was hired after engaging in protected activity, namely suing USPS. *Id.* (citing DSMF ¶ 22).

### 3.    Legitimate, Non-Discriminatory Reasons for Removal

Mr. DeJoy argues that even if Ms. Joyce could establish a prima facie case of discrimination, she has not rebutted USPS's legitimate, non-discriminatory reasons for her removal. *Id.* He argues Ms. Joyce has failed to prove by a preponderance of the evidence that her employer's reason for her termination was pretext for discrimination. *Id.* (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577-78 (1978); *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

Mr. DeJoy adds that Ms. Joyce's progressive discipline and employee conduct training prove that she was fully aware of the requirement to conduct herself in a manner that reflects favorably on USPS. *Id.* at 13. When Ms. Joyce "failed to improve her conduct, [despite] multiple opportunities," the Defendant claims Mr. Baker had no choice other than to terminate her position. *Id.* (alteration by Defendant). The Defendant adds that USPS is a business and its retail clerks are the face of that business, arguing "[a]n employer is not required to countenance continued contumacious conduct such as Plaintiff's when that behavior is documented to have driven customers away." *Id.* (citing *Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 221 (1st Cir. 2008) ("[C]ourts in employment discrimination cases may not act as 'super personnel departments,' substituting judicial judgments for the business judgments of employers")). Here, he says, Ms. Joyce's behavior was "well-documented," "corroborated by multiple witnesses," and raised in "specific complaints from four customers just in the months preceding Plaintiff's termination." *Id.*

20

Mr. DeJoy concludes that Ms. Joyce's refusal to accept responsibility for her actions and attempts to cast aspersions on others are insufficient to rebut USPS's legitimate, non-discriminatory reasons for its actions, and argues "[a]n employer only needs one good reason to succeed on summary judgment." *Id.* at 13-14 (citing *Diggs v. Potter*, 700 F. Supp. 2d 20, 50 (D.D.C. 2010) (citing *Furnco*, 438 U.S. at 577 (it is only when "all legitimate reasons for [an adverse action] have been eliminated as possible reasons for an employer's actions" that the fact finder can find that "the employer, who [the fact finder] generally assume[s] acts only with *some* reasons, based [its] decision on an impermissible consideration") (emphasis in original)).

### B.    Kathleen Joyce's Opposition

As noted, Ms. Joyce submitted three motions in opposition to the summary judgment motion. *Pl.'s First Baker Decl. Opp'n*; *Pl.'s Opp'n*; *Pl.'s Second Baker Decl. Opp'n*. The three motions generally contest the facts asserted in support of the Defendant's motion; none addresses the Defendant's legal arguments nor raises Ms. Joyce's own legal arguments. *Id.*

### C.    Louis DeJoy's Reply

First, Mr. DeJoy asserts that Ms. Joyce's responses in opposition to his summary judgment motion "are lacking both in form and substance," noting that despite the Magistrate Judge's specific instructions, Ms. Joyce's filings are not in compliance with Local Rule 56 because she did not file "a separate, short, and concise statement of material facts." *Def.'s Reply* at 1 (quoting D. ME. LOC. R. 56(c)). He argues his own statement of material facts should thus be deemed admitted pursuant

to Local Rule 56(f), *id.* at 1-2 (citing D. ME. LOC. R. 56(f)), and "[o]n that basis alone, the uncontroverted facts warrant granting Defendant's motion for summary judgment," *id.* at 2.

Second, the Defendant alleges that because Ms. Joyce has not opposed his legal arguments, dismissal is also appropriate on that basis. *Id.* (citing *Mallard v. Brennan*, No. 1:14-cv-00342-JAW, 2015 U.S. Dist. LEXIS 58468, at *25 (D. Me. May 5, 2015) (in turn citing D. ME. LOC. R. 7(b))). In short, he says, the Plaintiff "has not argued that she established a *prima facie* case of discrimination or retaliation . . .. Nor has she argued that she is able to rebut USPS's legitimate, non-discriminatory reason for her termination." *Id.* (citing *Def.'s Mot.* at 9-12, 12-14). He claims that "[b]ecause these arguments are unopposed, objection should be deemed waived." *Id.*

Third, Mr. DeJoy argues that even if the Court were to consider the substance of Ms. Joyce's filings, "Plaintiff has conceded more than she opposes," as she admits having "accidentally scanned the lobby one minute early," that she "accidentally forgot to close safes[] 2 and 3," and that she "did not yell at [a] customer, [she] raised [her] voice." *Id.* at 2-3 (quoting *Pl.'s First Baker Decl. Opp'n*). "Plaintiff concedes these events happened," he concludes. *Id.* at 3. Insofar as Ms. Joyce argues other employees were treated more favorably than she was, Mr. DeJoy opines "the record makes clear that discipline was issued, when appropriate, to male and female employees ranging in age from five to thirty years younger than Plaintiff." *Id.* (citing DSMF ¶ 17).

Mr. DeJoy concludes by urging the Court to grant his motion for summary judgment. *Id.*

## IV.  LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc.*, 637 F.3d at 56).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)).  Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), disregarding "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City*

*of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## V.    DISCUSSION

Ms. Joyce brings her remaining claims pursuant to Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. Title VII forbids employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000E-2(a). The statute also contains an "antiretaliation . . . provision [that] forbids discrimination against an employee or job applicant who, *inter alia*, has made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Innocent v. HarborOne Bank*, 319 F. Supp. 3d 571, 573 (D. Mass. 2018) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 5 (2006)) (cleaned up). Similarly, the ADEA prohibits employers from discriminating against employees based on age. *See* 29 U.S.C. § 623(a). "The ADEA requires that personnel actions affecting most employees who are forty years of age or older be free from age-based discrimination." *Jorge v. Rumsfeld*, 404 F.3d 556, 561 (1st Cir. 2005) (quoting 29 U.S.C. § 633a(a)). Following the First Circuit's directive, the Court "do[es] not distinguish further [between] the [ADEA and Title VII], as the standards of liability

under [both] are substantially identical." *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 127 n.2 (1st Cir. 1991).[14]

To assess a motion for summary judgment on the issue of causation in an employment discrimination case, Maine courts have applied the "three-step, burden-shifting analysis articulated in *McDonnell Douglas Corp.*" *Trott v. H.D. Goodall Hosp.*, 2013 ME 33, ¶ 15, 66 A.3d 7 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-05). In *Trott*, the Maine Law Court described the framework:

(1) the employee bears the initial burden to produce evidence that unlawful discrimination motivated the employer's adverse employment action against the employee;

(2) if the employee meets that burden, the burden shifts to the employer to produce evidence of a legitimate, lawful reason for the adverse employment action; and

(3) if the employer meets that burden, the burden shifts back to the employee to produce evidence that the employer's proffered reason is a pretext to conceal an unlawful reason for the adverse employment action.

---

[14] Both Title VII and the ADEA contain an administrative exhaustion requirement before an individual may seek relief in federal court. *Jorge*, 404 F.3d at 561, 564. However, a federal employee pursuing an ADEA claim "has the option of bypassing administrative remedies entirely and suing directly in the federal district court" after first "notify[ing] the EEOC of his intent to sue within 180 days following the occurrence of the allegedly unlawful practice and then observe a thirty-day waiting period before filing suit." *Id.* at 561 (citing 29 U.S.C. § 633a(c), (d)). "Unlike the ADEA, Title VII does not spare federal employees from running the administrative gauntlet. An individual who has suffered discrimination at the hands of a federal employer on account of race, color, religion, render, or national origin must file an administrative complaint with the EEOC within 180 days of the alleged unlawful employment practice." *Id.* at 564 (discussing 42 U.S.C. § 2000e-15(c)(1), 16(c)).

Ms. Joyce previously submitted evidence illustrating that she sought relief with the EEOC on her ADEA and Title VII claims before commencing suit in this Court, *Obj. to Recommended Decision*, Attach. 1, *Final Decision* at 1, and the Defendant does not contend that Ms. Joyce failed to exhaust her administrative remedies. *See, e.g., Def.'s Mot*; *Def.'s Reply*. The Court deems this argument waived and proceeds to the merits of the Title VII and ADEA claims.

*Id.* (citing *Fuhrmann v. Staples the Office Superstore East, Inc.*, 2012 ME 135, ¶ 13, 58 A.3d 1083).

### A.    Age Discrimination Claim

### 1.    The Prima Facie Case

The Court turns to whether Ms. Joyce has established a prima facie case of age discrimination.  "The elements of the prescribed prima facie case vary, within the age discrimination context, depending upon whether or not the plaintiff was dismissed as part of a reduction in force."  *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993).  "If there was no reduction in force, the plaintiff establishes the prima facie case by demonstrating that [she] '(1) was at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications.'"  *Id.* (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1117 (1st Cir. 1993)).  "If the employer dismissed the plaintiff as part of a reduction in force, the plaintiff 'need not show replacement by someone with equivalent job qualifications.  Instead, to satisfy element (4), the plaintiff may demonstrate either that "the employer did not treat age neutrally or that younger persons were retained in the same position."'"  *Hidalgo*, 120 F.3d at 333 (quoting *LeBlanc*, 6 F.3d at 842 (in turn quoting *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1111 (1st Cir. 1989))).

The parties do not dispute that Ms. Joyce demonstrated she was a member of a protected class based on her age at the time of her termination and that her employment was terminated, thus satisfying the first and third elements of a prima

facie case.[15]  *See LeBlanc*, 6 F.3d at 842.  Instead, the parties primarily focus on the second element of whether she met her employer's job performance expectations.

Mr. DeJoy emphasizes Ms. Joyce's sub-standard job performance, providing multiple customer complaints and ELM violations resulting in letters of warning and two separate suspensions.  *See Def.'s Mot.* at 9-10; DSMF ¶¶ 3-8.  In her responsive filings, Ms. Joyce does not contest the substantive veracity of the conduct resulting in customer complaints, letters of warning, and suspensions.  *See, generally, Pl.'s First Baker Decl. Opp'n*; *Pl.'s Opp'n*; *Pl.'s Second Baker Decl. Opp'n*.  Indeed, as Mr. DeJoy correctly notes, Ms. Joyce admits having "accidentally scanned the lobby one minute early," that she "accidentally forgot to close safes[] 2 and 3," and that she "did not yell at [a] customer, [she] raised [her] voice."  *Def.'s Reply* at 2-3 (quoting *Pl.'s First Baker Decl. Opp'n*).  The record simply does not establish that Ms. Joyce has shown she "met the employer's legitimate job performance expectation."  *See LeBlanc*, 6 F.3d at 842.

While the Plaintiff has established she is a member of a protected class and was terminated, the Court concludes she has not made out a prima facie case of age-

---

[15]    In her complaint, and in the denial of Ms. Joyce's request to the EEOC for administrative relief, it is proffered that Ms. Joyce was a sixty-four-year-old female when she was removed from her position as SSDA at the Freeport Post Office.  *See Compl.* at 9; *Final Decision* at 1-2.  This is well within the requirement that an individual seeking a claim of age discrimination be "at least forty years old."  *LeBlanc*, 6 F.3d at 842.  However, Ms. Joyce's age at the time of termination is not stated in the Defendant's statement of material facts, the motion for summary judgment, Ms. Joyce's three filings in opposition to summary judgment, or the Defendant's reply.  *DSMF; Def.'s Mot.; Pl.'s First Baker Decl. Opp'n; Pl.'s Opp'n; Pl.'s Second Baker Decl. Opp'n; Def.'s Reply*.

As "[t]he Supreme Court has made clear that the first stage of the *McDonnell Douglas* framework is 'not onerous,'" *Dusel v. Factory Mut. Ins. Co.*, 52 F.4th 495, 504 (1st Cir. 2022), and Mr. DeJoy does not contest that Ms. Joyce is a member of a protected class, *see Zannino*, 895 F.2d at 17, the Court concludes Ms. Joyce has established she is a member of a protected class for an ADEA claim based on her age.

based discrimination. The record would not allow a jury to conclude Ms. Joyce exhibited satisfactory job performance prior to her termination. Although the Court could end its inquiry here, "[t]he Supreme Court has made clear that the first stage of the *McDonnell Douglas* framework is 'not onerous.'" *Dusel*, 52 F.4th at 504 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)); *Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 57 (1st Cir. 2018) ("[T]he prima facie case requires only a 'small showing,' one that is 'easily made'") (quoting *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003)). As the result is the same, the Court proceeds to the second step of the *McDonnell Douglas* analysis to consider whether the Defendant produced evidence of a legitimate business basis for her termination.

### 2.    Legitimate Business Reason

The Court readily concludes that Mr. DeJoy has presented legitimate business reasons, namely customer complaints and ELM violations, for terminating Ms. Joyce. The Court credits Mr. DeJoy's statement that USPS is a business, and its retail clerks are the face of that business; "[a]n employer is not required to countenance continued contumacious conduct such as Plaintiff's when that behavior is documented to have driven customers away." *Def.'s Mot.* at 13 (citing *Arroyo-Audifred*, 527 F.3d at 221). The Court will not sit as a "super personnel department[]," *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991), and second guess Mr. DeJoy's professional judgment on this point.

### 3.    Pretext

"At the final stage of the *McDonnell Douglas* scheme, the burden returns to [the plaintiff] to demonstrate that [the employer's] asserted reasons for [her] termination were pretextual." *Dusel*, 52 F.4th at 506. "[W]hen a plaintiff seeks to show pretext by debunking the stated reason for the adverse employment action, they must present evidence from which a reasonable jury could supportably conclude 'that the employer's explanation is not just wrong, but that it is so implausible that the employer more likely than not does not believe it.'" *Id.* at 508 (quoting *Forsythe v. Wayfair Inc.*, 27 F.4th 67, 80 (1st Cir. 2022)). To sustain this burden, Ms. Joyce "must . . . show, by a preponderance of the evidence . . . 'that age was the 'but-for' cause of the employer's adverse action.'" *Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc.*, 999 F.3d 37, 51 (1st Cir. 2021) (quoting *Vélez v. Thermo King de P.R.*, 585 F.3d 441, 447-48 (1st Cir. 2009)). At this stage, "the focus should be on the ultimate issue: whether, viewing the 'aggregate package of proof offered by the plaintiff' and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the termination of the plaintiff's employment was motivated by age discrimination." *Domínguez-Cruz v. Suttle Caribe, Inc.*. 202 F.3d 424, 431 (1st Cir. 2000) (quoting *Mesnick*, 950 F.2d at 824-25).

Viewing the record in the light most favorable to Ms. Joyce, the Court concludes that there is no triable issue as to whether Mr. DeJoy's asserted reason for Ms. Joyce's termination was pretextual. First, "pretext can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard

business practices." *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 68 (1st Cir. 2008). Though not typically dispositive, the failure of an employer to follow progressive discipline may be "one of several indicia of pretext." *Venable v. T-Mobile USA, Inc.*, 603 F. Supp. 2d 211, 218 n.8 (D. Me. 2009). Here, as explained above, the record does shows that Mr. DeJoy followed USPS's progressive discipline policy with respect to Ms. Joyce by issuing multiple letters of warning and imposing two suspensions prior to her ultimate termination.

Second, "evidence of age-related comments could support an inference of pretext and discriminatory animus." *Domínguez-Cruz*, 202 F.3d at 433. The record contains no evidence of age-related comments in the case at bar. Ms. Joyce alleges that Mr. Baker called her "dyslexic, a train wreck, a prepper, a malcontent, and inefficient."[16] *Def.'s Mot.* at 11 (citing DSMF ¶ 21). While colorful and perhaps cruel, these terms make no reference to the Plaintiff's age.

Third, nothing in the record would allow a jury to find that Ms. Joyce experienced disparate treatment through a facially neutral policy. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 271 (1st Cir. 2022) ("The application of a facially neutral policy may constitute disparate treatment where an employer uses the facially neutral policy as a pretext to engage in intentional discrimination").

---

[16]     Although the other words are self-explanatory, the Court is not familiar with the term "prepper" and the parties have not explained it. The Merriam-Webster Online Dictionary defines "prepper" as "a person who gathers materials and makes plans in preparation for surviving a major disaster or cataclysm (such as worldwide economic collapse or war)." *Merriam-Webster Online Dictionary*, Prepper Definition & Meaning - Merriam-Webster. *See* https:www.merrian-webster.com/dictionary/prepper. The Court supposes prepper could be a pejorative but is by no means certain it is. Moreover, there is no intimation that the term is related to age or gender. By contrast, the Court takes as a given that the four other terms are critical of Ms. Joyce.

In all, the Court concludes these factors do not present a jury question as to whether Mr. DeJoy engaged in age discrimination in violation of the ADEA.

## B.    Sex Discrimination Claim

To prove a case of sex discrimination under Title VII, a plaintiff "must present evidence that he or she is a member of a protected class, was qualified for the position at issue, and was adversely treated by the employer based on gender." *Johnson v. York Hosp.*, 222 A.3d 624, 632 (Me. 2019). "If, in the context of summary judgment motion practice, the employee meets the burden of production for 'these three elements, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory basis for its action.'" *Id.* (quoting *Daniels v. Narraguagus Bay Health Care Facility*, 45 A.3d 722, 726 (Me. 2012)). "Finally, if the employer presents such evidence, 'the burden shifts back to the plaintiff to demonstrate that the nondiscriminatory reason is pretextual or irrelevant and that the unlawful discrimination brought about the adverse employment action.'" *Id.* (quoting *Doyle v. Dep't of Hum. Servs.*, 824 A.2d 48, 54 (Me. 2003)). In this inquiry, the Court focuses, as the parties do in their briefing, on whether Ms. Joyce's termination was based on her gender. As a woman, Ms. Joyce is a member of a protected class under Title VII and as Mr. DeJoy fired her, she was adversely treated.

### 1.    The Prima Facie Case

The record does not address whether Ms. Joyce was qualified for her position but does establish her prior experience working for USPS. DSMF ¶ 22 (discussing Ms. Joyce's suit against USPS, *Joyce v. Postmaster General, United States Postal*

*Service*, 2013 U.S. Dist. LEXIS 10314, and her subsequent hiring). Viewing the evidence in the light most favorable to Ms. Joyce, the Court concludes a jury could find Ms. Joyce was qualified for her position.

Turning to whether Ms. Joyce was terminated based on her gender, the evidence applicable to the age discrimination claim also applies here and in the interest of brevity the Court will not repeat it. As with the age discrimination claim, the record contains no evidence showing disparate treatment of Ms. Joyce because of her gender. On the contrary, the record shows both that other women were disciplined, such as M.C. and P.L., whom she alleges were treated more favorably than she was, *id.* ¶ 18, and that Ms. Joyce's termination was justified by her poor job performance, *id.* ¶¶ 4-14.

The Court concludes that Ms. Joyce has not made out a prima facie case of sex discrimination. As with her age discrimination claim, Ms. Joyce has not presented evidence that, when viewed in the light most favorable to her, she was treated differently due to her gender or that her termination was the result of her gender, rather than her failure to adjust her workplace conduct in response to multiple letters of warning and suspensions spurred by customer complaints and documented ELM violations. Based on the record, the Court concludes Ms. Joyce has not established a prima facie case of sex discrimination.

### a.    Legitimate Business Reasons

Even if the Court were to find Ms. Joyce demonstrated a prima facie case, for the same reasons described above, the Court concludes that Mr. DeJoy met his

burden of production by demonstrating that USPS had legitimate business reasons, namely poor job performance, for terminating Ms. Joyce.

### b.    Pretext

Like the age-based discrimination claim, the Court again concludes that a jury could not plausibly find that Ms. Joyce has met her burden of demonstrating that Mr. DeJoy's proffered reason for her termination was pretextual with respect to gender discrimination.  There is no evidence in the record that would allow the Court to conclude otherwise.  Ms. Joyce has thus not raised a genuine dispute of material fact as to whether her termination was gender-based in violation of Title VII.

## VI.    CONCLUSION

The Court GRANTS Louis DeJoy's Motion for Summary Judgment (ECF No. 30) and DISMISSES the case without prejudice.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of December, 2024